## MRS. MALONE *v.* KITCHING et al.

Where a creditor charges that the judgment of the wife against her husband was obtained through fraud and collusion, the burthen of proving that such judgment had a legal foundation, is upon the wife.

APPEAL from the Third District Court of New Orleans, *Kennedy*, J. *Clack*, for plaintiff and appellant. *Garnett Duncan*, for defendants.

VOORHIES, J. *Mary Houghran* brought an action against her husband in the Fourth District Court for the recovery of her separate property. She

alleged in her petition, that she was married in Ireland to *T. C. Malone*, to whom she had been affianced before he resided in New Orleans; that in August, 1841, the marriage was consummated, and she at once, as it was her intention before, came with her husband to reside at his domicil in New Orleans; that at the time of her marriage, she possessed in her own right the sum of $2,425, given to her by her father; that eight or nine months after her marriage, she acquired $3,000 from her brother, and also other sums by donation and succession; and that all of said money received by her was at once given and intrusted to her husband, who used the same in the prosecution of his trade and business. *Malone* filed an answer in which he averred, that he could not deny the facts which had led his wife to believe that this suit was essential for the protection of her rights; that as to the amount of moneys received by her from her family, he submitted the case to the court and was willing that such judgment should be rendered as was right under the proof. On the 9th September, 1852, a final judgment was rendered in her favor on the testimony of two witnesses, *John J. Lafarelle* and *H. C. Edward*, taken out of court and without cross-examination. *Edward* testified that the plaintiff was married to *T. C. Malone*, in Ireland, in the year 1841, with intent to proceed at once to the domicil of her husband in New Orleans; that in August, 1841, her father *Matthew Houghran*, made her a donation of five hundred pounds sterling, which her husband received and for which he gave a receipt to her father in the hand writing of the latter; that her husband also received since her marriage, from her father, as a donation to her, the further sum of $3,000, and from the succession of her brother, the sum of $7,000. The receipt alluded to by this witness is as follows, viz:

" £500.                                    BALLINAMIRE, King's Co., Ireland.
    Received from my wife, *Mary Malone*, through the hands of her father, *Matthew Houghran*, five hundred pounds sterling, the same being given her by her father in consideration of marriage, and to be kept for her own use.
        (Signed)                                      THOS. C. MALONE."

The witness declared this receipt to be true and to be signed by *Malone*, who had used the money in his business. *Lafarelle*, the other witness, testified that the plaintiff married with the intent to come at once to New Orleans, where her husband then resided; that at the time of her marriage in August, 1841, her father made her a donation of five hundred pounds sterling, which her husband received and used in his business; that afterwards her father gave her $3,000 more, and she had from her brother's succession $7,000; that all this money was put into the hands of *Malone* and by him used in his business. On the 21st September, 1852, *Malone* conveyed to his wife, by authentic act, as a " *dation en paiement*" of the judgment against him, all the real and personal property then owned and possessed by him, among other things, the three following named slaves, to wit: *Jane*, aged about 41 years, a good plain cook, washer, and ironer, for the price of $350; *Dennis*, aged about 26 years, for $500, and *Jim*, aged about 28 years, for $300. *Malone*, it appears, had previously conveyed all his property to his wife as a dation en paiement, by authentic act, dated 17th July, 1851. That act was declared to be null and void at the suit of *Joseph Mitchell*, a creditor of *Malone*, on the 13th of March, 1852. The slaves *Jane* and *Dennis* were seized and advertised to be sold by the Sheriff, as the property of *T. C. Malone*, by virtue of a writ of *fieri facias* issued against him on a judgment in favor of the defendant, *J. B. Kitching*.

The sale was enjoined by the plaintiff, *Mary Houghran*, on the ground that the
slaves thus seized, belonged to her by virtue of her said judgment and dation
en paiement.

In answer to the injunction, the defendant pleaded the general issue, and,
besides, averred that the property seized belonged to the community, and
was therefore liable for its debts contracted by *T. C. Malone* as the master and
head thereof; that the alleged judgment in favor of the plaintiff was obtained
by fraud and collusion between her and her said husband; that she never
possessed any right, or received by donation, or otherwise, any of the sums of
money which formed the basis of her pretended judgment, which was obtained
with the view and intent to defraud the defendant and the other creditors of
said *Malone;* and that said property had always been in the possession of and
administered by said *Malone*, who had received its fruits and revenues.

The case was tried on these issues and judgment was rendered in favor of
the defendant, dissolving the injuction with damages against the plaintiff and
her surety on the bond. From which judgment the plaintiff has taken this
appeal.

The effect which ought to be given to the plaintiff's judgment against her
husband as the basis of her title, is the only question which is presented for
our decision. It is well settled, in cases where the answer charges the judg-
ment to have been obtained through fraud and collusion, that the burthen of
proof is thrown on the plaintiff to establish the truth and genuineness of the
foundation of such judgment against her husband. 8 N. S., 459; 4 L. R.,
422; 11 ibid, 536; 12 ibid, 296; 4 Ann., 135.

From a careful examination of the evidence, we do not think the judge a quo
erred in his conclusion. It appears that the record of the suit of the plaintiff
against her husband, and the authentic act executed in her favor by him as a
*dation en paiement*, constituted all the evidence on the trial below to substan-
tiate the claims on which her judgment was based. The testimony of *Lafa-
relle* and *Edward*, it would seem was also considered by the plaintiff to be in
evidence with the record of the suit in which it was taken. *George Brooks*,
one of the defendant's witnesses, testified that *Malone* went to Ireland in 1840,
to get married, and came back without his wife in 1841, and something over a
year after his return, he sent for his wife. Mrs. *Connelly*, another of the
defendant's witnesses, testified that *T. C. Malone*, who was a nephew of her
husband and in his employment, had been married in Ireland when he sent
for his wife; that she heard the plaintiff say that when she and her husband
came to Liverpool, she was obliged to return to her father's house in Ireland,
as they had not the means for both of them to come to this country, and was
obliged to wait until her husband got the means to send for her. *Malone*, who
then boarded at witness's house, sent for his wife and furnished the means for
that purpose. Mrs. *Coats*, another witness for the defendants, also testified
that she had a conversation with the plaintiff, in which the latter stated that
she had to remain in Ireland after her marriage, until her husband sent her
money to come to this country. The testimony of these witnesses is in con-
flict with that of *H. C. Edward* and *John J. Lafarelle*. Besides, there are
other circumstances disclosed by the record which are well calculated to cast
suspicion on the testimony of the latter. The plaintiff in her suit against her
husband only claimed as a donation from her father the sum of $2,425, at the
time of her marriage, and from her brother, $3,000, received eight or nine

MALONE
*v.*
KITCHING.

months after her marriage; both of these witnesses proved not only the amount thus claimed, but also the further sum of $3,000 as a donation from her father, and from her brother the sum $7,000, making an aggregate of $12,425, which, it was roundly asserted by them, had been received and used by the husband in his business. The commissioner who took their testimony, testified that he did not know either of them. There was no attempt to prove the character or standing of *Edward.* Two witnesses testified on behalf of the plaintiff, that they were acquainted with *John J. Lafarelle;* that his character for truth and veracity was good; that he had left here about a year previous to their examination, which took place in February, 1853, and had since resided in New York with his brother. *Green,* one of the witnesses, stated that he had received a letter from him six weeks or two months ago; that he was well acquainted with his signature; that the signature to the deposition exhibited to him, was that of *Lafarelle.* He did not believe he could produce the letter. The identity of *John J. Lafarelle* as the person who signed the deposition, is rendered extremely doubtful by the testimony of his brother, *Thomas W. Lafarelle,* who testified that the word "*John*" looked exactly like his brother's writing, but "*Lafarelle*" did not, and besides the signature was different from that of his brother, who generally signed "*John J. Lafarelle,*" and not "*John James Lafarelle;*" and that he did not know whether it was his brother's signature. He was satisfied that his brother was unacquainted with any of the parties previous to April, 1841, when he, witness, left the county where they both resided together and in a different county from that where the parties resided. On the whole, we are satisfied that the plaintiff has entirely failed to substantiate her demand.

It is therefore ordered and decreed, that the judgment of the District Court be affirmed with costs.