## L. C. HENDERSON *v.* D. B. TROUSDALE, et al.

The neglect of the Clerk to file the appeal bond, which he has certified as a part of the record in the case, cannot be imputed to the appellant, and affords no grounds for the dismissal of the appeal.

Under the common law, as it prevails in Georgia, the husband by the fact of marriage becomes entitled to the slaves and other personal property of his wife, although he may not have reduced the slaves to his exclusive possession. And where the spouses afterwards remove to Louisiana, the value of the property thus acquired cannot be made the basis of an action by the wife against the husband. It is otherwise with respect to sums of money received by the husband from the sale of his wife's real estate, and with respect also to *choses in action* not reduced to possession by the husband, but collected after the removal of the spouses to this State.

Where there is nothing to show fraud and collusion on the part of the husband and wife, in an action for the separation of property, an error in the amount for which the judgment has been rendered, should not avoid its effects upon after-acquired property.

The tenor of the petition and a prayer for general relief may justify a decree for separation of property without an express prayer to that effect.

APPEAL from the District Court of Union, *R. W. Richardson*, J. *Baker*, for plaintiff. *McGuire & Ray*, for defendant and appellant.

MERRICK, C. J. The motion to dismiss the appeal in this case is overruled. The neglect of the Clerk to file the appeal bond which he has certified as a part of the record in this suit cannot be imputed to the appellants, and therefore cannot prejudice them.

This action is brought to enjoin the Sheriff of the parish of Union from selling a negress and certain town lots in the town of Farmerville.

It seems that the plaintiff was married to *Isaiah P. Henderson*, in the State of Georgia, sometime in the month of February, 1840. At the time of the marriage she was a minor in the possession of an interest in lands and slaves inherited by her from her deceased father. It does not clearly appear whether or not the slaves had been divided among the heirs at the time of the marriage. As the maiden name of the plaintiff is used in the *proces verbal* of the partition, signed 17th February, 1840, we infer that it was made prior to the marriage. Two slaves, *Tom* and *Henrietta*, and a small sum of money were set apart to her in this partition. In the year 1842 her husband left the State of Georgia for Louisiana, and his wife came out the year succeeding.

The evidence, though not very clear, leaves it probable that the slave *Tom* remained in the partial possession of Mrs. *Bryan*, the mother and former guardian of the plaintiff, from the marriage until sometime after the removal of *Henderson* and wife to the State of Louisiana, when he was sent to them.

It also appears that plaintiff's portion of the proceeds of the lands in Georgia and Alabama were sent to them during their residence here. Four

hundred dollars, being the proceeds of the land in Georgia, were sent them in 1844, and three hundred and thirty three dollars, the proceeds of those in Alabama, in 1849.

In 1846 *Henderson,* the husband, sold the slave *Tom* to one *Feazel* for six hundred dollars.

In 1849 the plaintiff instituted a suit for separation of property against her husband, claiming judgment for the price of the slave *Tom,* and $700 in money, received by her husband. A decree of separation of property was rendered in her favor in June, 1849, recognizing her demand against her husband for $1200, and awarding her judgment against him for that sum.

This judgment was, therefore, previous in date to the date of the receipt for $333, her portion of the proceeds of the Alabama land, though the testimony leaves it somewhat uncertain whether this sum had not been received by *Henderson,* prior to the date of the receipt.

In October, 1849, the property, now in controversy, having been seized at the suit of *Carrollton, Frothingham & Co.,* against *Henderson,* was sold at Sheriff's sale to the plaintiff, and adjudicated to her by the Sheriff.

The defendants, *Paul Tulane & Co.,* having a judgment against the husband of plaintiff, caused an execution to issue and be levied upon the negress and lots in controversy, as the property of *Henderson,* disregarding the Sheriff's sale to the plaintiff, and her decree of separation of property.

She injoined the sale, and in this action she sets up her suit of separation of property and proceedings under it, and her purchase of the property in controversy under the execution levied in the suit of *Carrollton, Frothingham & Co.* against her husband, as the basis of her title.

The defendants aver that the forms of law in the suit of separation were not complied with; they deny that her husband was indebted to the plaintiff, and allege that the whole matter of plaintiff's pretended separation and her claim is a fraud, and intended to defraud her husband's creditors, and that there had been no legal execution of said judgment.

The lower Court rendered a judgment in favor of plaintiff, perpetuating the injunction and quieting the plaintiff in her title and possession, and the defendants appealed.

On the part of the appellants it is contended, that as the marriage was consummated in Georgia, a State in which the common law prevails, the slaves (being there considered personal property) together with all other personal effects of the wife, became the property of the husband by fact of marriage.

The plaintiff, in order to avoid this consequence, alleges, and has attempted to prove, that the slave *Tom,* as well as the money, was not received by *Henderson* until after his removal to Louisiana.

It is clearly established that *Thomas Bryan,* the father of plaintiff, died two or three years previous to her marriage.

Not being aware of any statute of Georgia changing the common law in this respect, we are of the opinion that it was not necessary for the husband t have had the exclusive possession of the slave *Tom,* in order to make him his property. The act of marriage invested the husband with all the personal effects of the wife, (the *choses in action* excepted,) in full property. We therefore think that the judgment of separation, so far as it embraced the price of the slave *Tom,* was erroneous. As the husband does not become by the common law the owner of the real estate of the wife, we think *Henderson* was

chargeable with the sums of money received by him after his removal to Louisiana, it being the wife's interest in the lands sold in Georgia and Alabama. Four hundred dollars of this appears to have been received prior to the judgment of separation, and justified the decree of separation of property, at least for that amount.

Had the money sent been the proceeds of *choses in action*, not reduced to possession, but collected after the removal of *Henderson* and wife to Louisiana, it would have also belonged to the wife, and justified the judgment *pro tanto*.

There is nothing in the fact that the plaintiff instituted her action for the price of the slave *Tom*, as well as the proceeds of the sale of the lands in Georgia, which could be considered as characterizing her suit for separation of property as fraudulent. If she erred, the Judge who decided the case by decreeing her the price of the slave, erred also.

We do not think (where there is nothing to show fraud and collusion on the part of the parties to the action of separation of property,) that an error in the amount for which the judgment has been rendered, should avoid it as to its effects upon after acquired property. We think it should be permitted to stand and produce the effect of dissolving the community, and of leaving the wife separate in property from her husband, and consequently the right to acquire property by purchase. If the creditors have any right to all or any part of the proceeds of the sales made on the execution of the wife on her judgment of separation against her husband, their remedy is in a different proceeding.

We do not think that there is anything in the objection, that, in plaintiff's petition for a separation of property, there was no express prayer for a dissolution of the community. The tenor of the petition and the prayer for general relief, justified the decree.

Were it necessary to be proved, the proceedings now before us leave us sufficient from which to infer the embarrassed circumstances of the husband at the time of the judgment of separation, but we do not understand that this fact has been put at issue by the answer although urged in argument.

It is therefore ordered, adjudged and decreed by the Court that the judgment of the lower Court be affirmed, and that the appellants pay the costs of appeal.