| 1 | 301 |
|---|---|
| 119 | 684 |

---

# SPURLOCK *v.* MAINER.

Plaintiff's husband conveyed to her a plantation, slaves, and moveables, appraised at a certain sum. The act recited that, it was made in order to replace an amount of paraphernal property converted by the husband to his own use, equal to about one-third of the estimated value of that conveyed to her; that the wife, being, for the amount of her paraphernal property, the oldest mortgage creditor of her husband, accepted, with a reservation of her mortgage rights against the subsequent mortgage creditors of her husband, it being expressly stipulated that the conveyance should be regarded as null, if its effect should be to extinguish her rights as first mortgage creditor; and that the difference between the amount of her paraphernal claim and the appraised value of the property, is detained by her to discharge the other mortgages on the property. The act declares that the wife thereby assumes the administration of the property. A judgment creditor of the husband having seized a portion of the gathered crops made on the plantation by the wife, she enjoined the execution: *Held,* that the contract was one of sale; that being between a husband and a wife, and not included in any of the exceptions mentioned in art. 2421 of the Civil Code, it is, as to third persons, absolutely null; that the stipulation by the wife in relation to the amount to be applied to the discharge of the subsequent mortgages, whether she be considered as having thereby bound herself personally to discharge them, to the amount of the excess of the appraised value over her claim, as a part of the price, or not, would be separated from the rest of the contract, and being illegal, vitiates the whole; that if the wife be considered as having contracted a sale and bound herself personally to discharge the mortgages as a part of the price, the stipulation is prohibited by art. 2421 of Civil Code, which declares that a wife cannot bind herself for her husband, or conjointly with him, for debts contracted by him before or during the marriage; that if considered as not having relinquished her mortgage nor bound herself personally, the contract is illegal, as its effect would be to entitle her to receive the fruits and revenues of property of three times the value of her debt, and which would otherwise have been received by the husband as a fund for the payment of his creditors, while the whole capital of her claim would be reserved as an anterior incumbrance;

SPURLOCK
*v.*
MAINER.

and that the sale, being absolutely null as to third[persons, the property never ceased to be community property, and was liable to seizure by any creditor of the husband, without resorting to a direct action to annul the sale.

A PPEAL from the District Court of Rapides, *King*, J.
     The judgment of the court was pronounced by

SLIDELL, J.   On the 13th February, 1843, *James D. Spurlock* executed a notarial act, which was duly recorded on the following day, in favor of his wife, the present plaintiff, by which he conveyed to her a plantation in the parish of Rapides, with its buildings and improvements, and also a number of slaves, and certain furniture and other moveables.   After describing the property and stating it to be the property of the vendor, he declares that he had caused a sworn appraisement of it to be made, by appraisers chosen by himself and wife, who had valued it at $33,305, which appraisement is annexed to the act.   He then declares that he has received and converted to his own use, of the paraphernal property of his wife, the sum of $10,950 ; and to show the manner and form in which said moneys had been received, he refers to certain acts which are stated to be of record in the office of the parish judge of that parish, and gives their respective dates ; the acts, however, are not annexed.   The wife then declares that she has a legal mortgage on all the real property of her husband for the restitution of these sums, to have rank and effect as evidenced by said acts so recorded.   The husband then declares that, in order to replace the effects of his wife so alienated by him, he sells and delivers to her the said lands, slaves, and moveables, to hold the same, to her, her heirs and assigns, for ever.   The wife then accepts and stipulates as follows : " Now the said *Eliza Spurlock* doth accept this sale and transfer in and for consideration of the sum of $33,305.   To the extent of the sum of $10,950, she is the oldest mortgage creitor of said *J. D. Spurlock*, and she accepts with the express reservation of her [rights of mortgage against all posterior mortgagees of her said husband, it being expressly stipulated that this act is to be regarded as null, if, by the acceptance of a transfer of this character, her rights are to be regarded as extinguished, and persons holding subsequent rights on the property may exercise an hypothecary action free from hers, as an anterior incumbrance.   The balance of the consideration, to wit, the sum of $22,355, the said Mrs. *Eliza Spurlock* retained in her hands, to discharge the next oldest mortgage creditors of her said husband to said amount.

" And now the said *Spurlock, J. D.*, doth covenant and agree to and with the said Mrs. *E. Spurlock*, that he will warrant and for ever defend the above described premises, against the claim or claims of all persons whatever, his own heirs and assigns.   And now the said Mrs. *E. Spurlock* declared that, she does by these presents resume the administration of the above described property, as her separate paraphernal effects.   The production of, or mention herein of, any certificate of mortgages, is waived and dispensed with."

The act contains no recital of the names of, or amounts due to, the mortgage creditors.   In September, 1844, more than a year having expired, *Mainer*, a judgment creditor of *Spurlock's*, the husband, caused the land and crops to be seized under a *fieri facias*, but subsequently released the land, retaining the seizure upon the gathered crops only.   The plaintiff, who had previously notified the sheriff of her title under the notarial act, and made a formal notarial protest against the parties, then sued out a writ of of injunction against the sheriff and *Mainer*, alleging her title by the notarial act and her separate admin-

istration, and praying for the usual relief. To this the defendant, *Mainer*, an-   SPURLOCK
swered, by a general denial.                                                                      *v.*
                                                                                                        MAINER.

At the trial of the cause the plaintiff offered in evidence the act of sale from her husband, the inventory and appraisement, and certificate of their having been recorded; also an admission that the cotton seized was produced on the plantation, and by the labor of the slaves so conveyed. She also proved that she had been living on the plantation since the date of the sale: that the property was assessed for taxes in her name: that the accounts of the commission merchant, to whom the crops had been consigned since the sale, were kept in her name; and that the cotton going from the plantation since that date had been marked with her initials. She gave no proof of the alleged indebtedness of her husband to her, as stated in the sale. On the part of the defendant it was proved that, the husband continued to live at the plantation, with his wife and family, as before; that the husband appeared to take the same interest in the management of the plantation as before the sale, there being however an overseer upon the plantation; and that the husband apparently exercised the same superintendance as owner, making puschases of the usual necessaries of clothing for the slaves, &c. The court below gave judgment perpetuating the injunction, and the defendant has appealed.

A very strange and annomalous instrument is here presented; evidently contaived for the purpose of a fraud, it does and undoes in the same breath. It purports to be a *dation en paiement* up to the sum of $10,950 for paraphernal claims, for which the wife declares herself to be the oldest mortgage creditor; and, in the very same sentence, declares that she accepts the sale with the express reservation of her rights of mortgage against all posterior mortgagees of her said husband, and expressly stipulates that the act of sale is to be regarded as null, if, by the acceptance of a transfer, her rights are to be regarded as extinguished, and persons holding subsequent rights may exercise an hypothecary action, free from hers, as an anterior encumbrance. One thing is certain—either her paraphernal claims were not intended to be satisfied and paid by this sale, or they were so intended to be. On either hypothesesis we have come to the conclusion that this sale is an absolute nulity on its face, as against third persons. This conclusion results from the application of a few familiar principles, established by the positive legislation of our Code. The law, from wise considerations upon which it would be superfluous to enlarge, has thought proper to declare husband and wife incapable of contracting with each other during the marriage, except only in certain specially enumerated cases. The incapacity is the general rule. Can the case before us be brought within the exceptions?

This is a contract of sale. It has not only the form of a sale, but is expressly declared to be so, by the contracting parties. Article 2421 of our Code declares that a sale between husband and wife can take place *only* in the three following cases:

1st. When one of the spouses makes a transfer of property to the other, who is judicially separated from him or her, in payment of his or her rights.

2d. When the transfer made by the husband to his wife, even though not separated, has a legitimate cause, as the replacing of her dotal, or other effects, alienated.

3d. When the wife makes a transfer of property to her husband, in payment of a sum promised to him as a dowry.

SPURLOCK
v.
MAINER.

There being no judicial separation in this case, this sale either falls under the second exception to the general disability, or else has no legal existence as against third persons. Now, under the first hypothesis above stated, that the paraphernal claims of the wife were not intended to be satisfied by this sale, it is manifestly an absolute nullity as against third persons ; for to make that satisfaction only, were these parties authorized to enter into the contract of sale, by the exceptional prouision above stated. If, however, it be possibie to reconcile the complicated and anomalous stipulation of these parties with regard to the payment of the wife's claim, with a fair construction of this exceptional provision, there still remain other objections to this sale, which create, in the opinion of the court, insurmountable obstacles to the plaiutiff's success.

There are but two interpretations which can be given to that part of the act which stipulates as to the mortgage creditors of the husband. One is that, by this act she promised and assumed, as part of the price, that she would discharge the next oldest mortgage debts of her husband, to the amount of $22,-355. The effect of such a stipulation we shall first consider, observing that this is the interpretation which the plaintiff's counsel gives to this act. Article 2421 being exceptional to the general disability, parties acting under it must keep themselves strictly within the exception. In the present case, the contract over-steps the law. It has a two-fold aspect, and a two-fold consideration. It sells property, valued by their own appraisers at $33,305, not simply to replace her paraphernal effects, but upon consideration also, under the interpretation which we are now applying, that the wife shall discharge the next oldest mortgage debts of her husband, to the amount of $22,355. Now here the parties have positively transgressed a clear prohibition of the Code. The wife, whether separated in property by contract, or by judgment, or not separated, cannot bind herself for her husband, nor conjointly with him, for debts contracted by him before or during the marriage. Civ. Code, art. 2412.

This contract is one and indivisible. Human ingenuity cannot separate its provisions, without leading to results which would be monstrous, not only as far as creditors are concerned, but even as to the other contracting party. We cannot say that the contract is good so far as the wife is reimbursed, and void for the liability which she has unlawfully assumed towards the husband's creditors. This would leave her with an estate worth $33,305, for a consideration of $10,950, under a contract expressly made in consideration of a price of $33,305. We cannot select for the wife a portion of the property, up to the value of her claim, at our own arbitrary discretion, and restore the residue to the husband, cancelling the wife's liability for the residue of the price. The contract was entire ; a sale of an entire estate, for an entire consideration ; and yet two thirds of that consideration contracted in violation of an express legal prohibition, and consequently *ab initio* null and void as to the third persons. The nullity then is such, from its nature, as to contaminate the whole contract. The nature of the sale is such that it cannot subsist, but by the validity of all its parts ; necessarily, therefore, the nullity of one portion draws with it the nullity of the whole.

The plaintiff's counsel, while he admits that the intent of the instrument was that she should assume her husband's debts, defends it on the ground of necessity, the property being encumbered by mortgages. Such a consideration cannot excuse the violation of an express legal prohibition, even if the necessity existed. But the necessity did not exist, because the law authorized her to bring

suit against her husband, ascertain her rights by judgment, seize and sell his property, and thus extinguish the mortgages of other creditors, which the act expressly alleges were secondary to her own, and obtain an unincumbered title. Had she pursued this course, it would not have been necessary to divest her husband of the entire estate, which, by this instrument, she has attempted to do. There are more than fifty slaves conveyed by this deed, which are valued in the appraisement at $18,660. This property was susceptible of division, and was much more than sufficient to pay her claim; or, even if she had taken a sale from her husband of a portion of these slaves up to the value of her claim, her equity, as creditor by a first mortgage, which she alleges herself to be, would have amply protected her against the attack of a subsequent mortgagee.

We have thus considered this case, upon the interpretation invoked by the plaintiff as the true meaning and intent of the instrument; and, viewed in that light, we have seen that it is void. But if we are to give it any other interpretation, there is but one other which we can adopt, and that is that, as to the $22,355, of mortgage claims, being the residue of the consideration of this sale, she did not intend personally to assume their payment, but to take the property subject to them, with a condition that, in the event of the property being seized by the subsequent mortgagees, her mortgage, in its full force, should revive and take its precedence. It is not surprising that she should not have claimed this interpretation, as, upon analyzing the sale upon this construction, it involves an inherent turpitude.

What is the true practical effect of such a contract? First, that the wife's mortgage is not really intended to be paid by the sale; and secondly that, though the interest on the wife's claim, even if it had been judicially ascertained, could not possibly have exceeded eight per cent, she, by this arrangement, would receive the entire revenues of an estate, which the act of sale and the sworn appraisement, declared to be worth $33,305. Assuming these revenues to be worth an amount equal to the highest rate of lawful interest on that capital, a yearly sum of more than $2500 is thus put by this conttact into the pocket of the wife, and the entire capital of her claim of $10,000 reserved as an anterior incumbrance, to be held over the husband's creditors; for the act expressly declares the property thus acquired to be paraphernal, and stipulates for the wife the separate administration, that is, reserves the fruits and revenues to her separate reception and use. The fruits and revenues, in the absence of this sale, would have been received by the husband, and have furnished a fund for the payment of his debts.

Such being the practical operation of this contract, what is to be its legal effects? Is it valid, or is it absolutely null as to third persons? The only right to make a sale at all by the husband to his wife, is found in the exceptional article already cited. The law created that exception to enable the husband to protect the interest of the wife, honestly; but for nothing else. The cause must be *legitimate*—the honest payment of the wife's claim. These parties have transcended the exception, and made a contract to commit a most patent and palpable fraud on the husband's creditors. They have attempted to pass beyond the exception of the law into forbidden ground. The incapacity is manifest, and absolute nullity, as to third persons, is its inevitable consequence. As we have already said, this sale is indivisible. The contract is one and entire, and the whole contract must stand or fall. A court of justice cannot hesitate when the question is, whether we shall extend a mere exceptional capacity, to

39

SPURLOCK
*v.*
MAINER.

a contract violating the intention of the exception, fraudulent on its face, and converting an authority, given only to secure honestly and fairly the rights of the wife, into a weapon to strike down the rights of her husband's creditors.

The contract in this case is not to be assimilated to a contract fraudulent against creditors, but made by parties not affected by a legal incapacity to contract. Yet, even in such a case, where the fraud was patent upon the face of the instrument, creditors have been allowed to proceed by a direct seizure, without a resort to the revocatory action. 13 La. 553.

From what we have said, the solution of the question presented by the injunction, that is, whether the defendant had a right to seize the property in dispute, obviously follows. The sale of the plantation and slaves being absolutely null and void as to creditors, by reason of the legal incapacity so to contract, the title of the plantation and slaves, as to creditors, never passed out of *James D. Spurlock*. It remained community property; and its gathered crops, the subject of the seizure, were community property, and were lawfully seized. When a contract is thus absolutely, and *ab initio*, void on its face, as to third persons, the complaining creditor cannot be driven to an action to have the nullity judicially declared. When a title is thus void, it cannot be a basis of prescription. See Pothier, Procedure Civile. Part 5, chap. 4, arts. 1 and 2. *Ibid.*, De la Prescription. Part 1, chap. 3, §1. Also Civil Code, articles above cited, and arts. 1784, 2360, *et seq.*

It is therefore decreed that the judgment of the court below be reversed; and it is further decreed that the injunction be dissolved, and that there be judgment in favor of the defendants, with costs in both courts.

*Waters*, for the plaintiff. *Brent* and *O. N. Ogden*, for the appellant.