John A. P. Maples et al. *v.* Mitty and Sarah, f. w. c.

Children to the extent of the *legitime* are not considered as heirs, but as creditors of their father's estate. They are entitled to the revocatory action *only* for the enforcement of their *legitime*, beyond that they are mere ordinary heirs and cannot be heard to allege the turpitude or defeat the judicial confession of their father. Vide *Succession of Trimmell*, decided in 1854, opinion book 24, page 323.

APPEAL from the District Court of St. Tammany, *Watterson*, J.

*G. S. Lacy*, *R. A. Upton*, and *Martin & Childress*, for plaintiffs. *A. Hennen*, and *J. R. Jones*, for defendants and appellants.

Buchanan, J. This is a suit instituted by the children and forced heirs of *Nathan Maples*, deceased, to set aside sales, made by the said *Nathan*, of the defendants in the cause, to one *Jenny Broxton*, their mother, as being simulated and in fraud of plaintiffs' rights as forced heirs. By a supplemental petition, the plaintiffs moreover pray that the emancipation of the said *Jenny Broxton*, and of her husband, *Phillip Broxton*, made many years before the sales of defendants to *Jenny*, be also revoked and set aside for the same reasons.

The question of the validity of the emancipation of *Jenny Broxton* and *Phillip Broxton*, cannot be considered by us. Both of those persons were dead at the time of the institution of the suit; and, even supposing that the action granted by Article 190 of the Civil Code, to revoke an emancipation made in fraud of the portion reserved to forced heirs, may be instituted after the death of the person emancipated, which we doubt, yet no issue has been joined upon this portion of the case, by any person claiming capacity to represent *Phillip* or *Jenny Broxton*.

The defendants except to the action, "because the same is disrespectful to the memory of the father and mother of plaintiffs, and such action cannot be sustained or allowed in a court of justice, as it casts a stain upon the character and reputation of their ancestors."

It is viewed by us as settled, that the children of the deceased, to the extent of the *legitime*, are not considered as heirs, but as creditors of their father's estate (*Rachal* v. *Rachal*, 4 An. 500); and that the law gives to the children the revocatory action, only for the enforcement of their *legitime*. *Succession of Trimmell*, decided in December, 1854, but not reported.

In the last mentioned case, the language of the court, through its organ, Chief Justice Slidell, was as follows:

For their *legitime*, they are, in legal contemplation, creditors. Beyond it, they are mere ordinary heirs, and as such cannot be heard to allege the turpitude, or defeat the judicial confession of their ancestors." Opinion Book 24, page 323.

In the present case, the verdict of the jury affirms the simulation of the two sales from *Nathan Maples* to *Jenny Broxton*, set forth in the petition, namely: 1st. That of defendant *Mitty* and her child *Joseph Robigo*, on the 11th October, 1831; and, 2d, that of defendant *Sarah* and her three children, *Arabella*, *Susan* and *Mary Jane*, on the 31st January, 1840.

With regard to the first of these sales, the record does not enable us to say, with confidence, that the conclusion of the jury was erroneous. There was a

conflict of testimony; and in such cases much weight is due to the jury's appreciation of the credibility of the witnesses who testified before them, and who were personally known to them.

Supposing the sale of *Mitty* and her child to have been simulated, we are next to inquire, (under the ruling in the case of *Trimmell's Succession*,) whether the said pretended sale prejudiced the plaintiffs' *legitime*. On this point, *Abraham Penn*, a witness of plaintiffs, testifies that *Mitty* and her child were worth, in his opinion, from eight hundred to one thousand dollars, in 1831; and *John A. P. Maples*, one of the plaintiffs, examined as a witness on the same side without objection, estimates the value of *Mitty* and her child, at the time of the sale, at one thousand dollars. *Nathan Maples*, the father of plaintiffs, died in 1841. His inventory is in evidence, and shows him to have been possessed, at the time of his death, of property to the amount of three thousand one hundred and thirty-eight dollars. It is not shown that his succession owed any debts.

From these facts, we conclude that the value of *Mitty* and her child did not equal the disposable portion of *Nathan Maples'* estate, being one-third of the same; and, consequently, that plaintiffs cannot revoke the sale of *Mitty* by their father, on the ground of simulation.

As to the sale of *Sarah* and her children, we are of opinion that the evidence disproves the charge of simulation. The consideration of that sale, expressed in the deed, was "eight hundred dollars, all cash in hand well and truly paid, the receipt of which is hereby acknowledged, and acquittance granted therefor." On the same day, (31st of January, 1840,) and before the same notary, (the parish Judge of the parish of St. Tammany,) on which and before whom the sale of *Sarah* from *Nathan Maples* to *Jenny Broxton* was passed, the vendee, *Jenny Broxton*, made a sale to *Mrs. Mary Maples*, wife of *Nathan Maples*, and by him authorized, of two lots of ground in the town of Covington, with all the buildings and improvements thereon situated," for and in consideration of the sum of eight hundred dollars, all cash in hand paid, the receipt of which is hereby acknowledged by the said vendor and an entire acquittance and discharge granted therefor." The price of the lots sold by *Jenny Broxton*, and that of the slaves purchased by her, thus appear to be identical; and the probability is, that the transaction was in reality an exchange of the slaves for the lots, although the vendor of the slaves was *Nathan Maples*, and the vendee of the lots was *Nathan Maples'* wife. For *Mrs. Maples* was a party to the sale by her husband, for the purpose of renouncing her mortgages and privileges; and *Nathan Maples*, as we have seen, was a party to the sale of the lots, for the purpose of authorizing and assisting his wife to make the purchase.

The lots thus sold appear to have been treated in subsequent proceedings, as *Nathan Maples'* property, with his wife's acquiescence. As such, they were inventoried; and were subsequently purchased by his widow, at the probate sale of his effects, for the price of their estimation in the inventory, six hundred dollars. The title of *Jenny* to the lots thus sold by her, is proved by other evidence in the record. There is no doubt, therefore, of the reality of the sale of the said lots by *Jenny*. It is true, that they are shown to have originally cost *Jenny* only one hundred and twenty dollars, and that the same lots were subsequently adjudicated to *Mrs. Halsey*, at the probate sale of the effects of *Mrs. Mary Maples*, for one hundred dollars. But these variations of the market value of the lots, do not avail to make out the case of plaintiffs. Granting that *Nathan Maples* and his wife gave much more for the lots than

they were worth, yet lesion is very different from simulation. The plea of ulation denies the reality of the sale. It does not seek relief on account of the inadequacy of the consideration. Here, the proof leaves no doubt on our minds that there was a real *bona fide* consideration for the sale of *Sarah* and her children, passing from *Jenny Broxton* to *Nathan Maples*.

It is, therefore, adjudged and decreed, that the verdict and judgment appealed from be reversed ; and that there be judgment in favor of defendants; the plaintiffs and appellees to pay costs of both courts.

MERRICK, C. J., declined taking part in the decision of this case.