## No. 8217.

HEIRS OF T. A. COMPTON vs. FRIEND L. MAXWELL.

THE SAME vs. HUGH B. LUCAS.

(Consolidated.)

A judgment of separation of property and dissolution of the Community, rendered after citation to the husband, duly published and followed by an execution, and subsequently and uniformly recognized by both parties thereto, in many acts and proceedings, cannot be set aside at the suit of the heirs of the husband, upon uncertain and verbal evidence.

APPEAL from the Eighth Judicial District Court, parish of Madison: *Deloney*, J.

*J. W. Montgomery* and *T. H. Crawford* for Plaintiffs and Appellants.

First—A judgment of separation between the wife and husband must be promptly settled so far as the husband's estate is sufficient for the purpose of payment, or it must be followed by a *bona fide* and uninterrupted suit to obtain payment: otherwise it becomes an absolute nullity. C. C. 2428; 28 An. 346; Ib. 572; 4 An. 513; 27 An. 403; 2 An. 149; 1 An. 308; 1 R. 431; 3 R. 328.

Second—Either party can set up the nullity when it becomes his or her interest; and although the judgment may have been founded on a groundless pretense, and obtained through fraud, if it be not executed the community is not affected by it. *Vide* same authorities.

*Farrar & Spencer* for Defendants and Appellees:

First—To recover in a petitory action, plaintiffs must show title, and make it out satisfactorily in all points, both as to title and identity, and cannot succeed, except on the strength of his own title, and cannot avail himself of the weakness of defendant's. 22 An. 57; 15 An. 410; 10 An. 460.

Second—Heirs at law can acquire no greater rights from their ancestor, under whom they claim, than he possessed himself, and can take no advantage of frauds perpetrated by him. Their rights are measured by his rights. C. C. 945; 13 An. 193; 9 An. 242; 5 An. 367

Third—As between the parties and their heirs, no evidence of simulation is admissible, except a counter-letter. And said counter-letter is of no effect against third persons, unless recorded prior to the acquisition of their rights. Hebert vs. Lige, 29 An. p. 511; 4 La. 167; 3 An. 154; 4 An. 489; 9 La. 566; 3 R. 457.

Fourth—The judgment between Mrs. Eliza Compton and her husband, Thos. A. Compton, became *res judicata* twelve months after its rendition. An action to annul it is barred by the prescription of twelve months. C. P. Arts. 613, 611.

Fifth—The nullity of that judgment cannot be demanded collaterally by either the parties or their heirs.

The opinion of the Court was delivered by

TODD, J. These two suits were consolidated and tried together.

The plaintiffs, as heirs at law of Thomas A. Compton, deceased, claim to be owners by inheritance of the lands described in their petitions. These lands consist in part of the Mound plantation in the parish of Madison.

The record establishes the following facts bearing on this controversy:

The Mound plantation belonged originally to Jesse Harper, and contained about 682 64-100 acres. Harper died, and the land was sold at succession sale on the 22d April, 1839. Thomas A. Compton, the ancestor of plaintiffs, became the purchaser on terms of credit.

On the 8th of February, 1841, sheriff T. B. Scott sold this property under an order of seizure and sale, in a proceeding styled David Stanbrough, Curator of the Succession of Jesse Harper vs. Thomas A. Compton, when Dugall McCall became the purchaser.

On the 18th January, 1842, McCall sold this land to Felix Compton, the latter assuming the payment of three promissory notes for $11,433, given by McCall to the curator of the succession of Jesse Harper for the purchase price. On the 7th of January, 1847, Felix Compton sold the same land to R. C. Stockton.

In 1845 or 1846, Thomas A. Compton removed with his family to New Orleans, and remained there several years.

On the 22d January, 1847, Mrs. Eliza Compton instituted a suit for separation of property against her husband, Thomas A. Compton, in the Fourth District Court for the parish of Orleans, and on the 15th day of June, 1847, judgment was rendered in her favor for $2400, dissolving the community of acquets and gains, and giving her the administration of her paraphernal property. On the 14th July, 1847, execution issued on this judgment and was returned *nulla bona*.

On the 17th November, 1852, sheriff Crandell, acting under two writs of *fi. fa.* issued from the Tenth District Court of the parish of Madison, in two proceedings styled David Stanbrough, curator of succession of Jesse Harper, vs. Felix Compton (judgment obtained on three notes given by McCall and assumed by Felix Compton for purchase price of said property), and Josiah Stanbrough vs. Felix Compton, seized and sold this property, when Mrs. Eliza Compton, wife of Thomas A. Compton, by her agent and attorney, W. S. Parham, became the purchaser, and executed her twelve-months' bond for the purchase price, with W. S. Parham as her security, the sale being made on terms of credit. R. C. Stockton, having qualified as curator of the succession of Jesse Harper after the death of David Stanbrough, receipted in full to

Mrs. Eliza Compton for the payment of the twelve-months' bond on the 9th February, 1856.

Thomas A. Compton died in 1861, in Madison parish. His succession was never opened.

In 1866, on the 28th March, Mrs. Eliza Compton gave a mortgage on this property, and including some lands entered and purchased by herself, and also some swamp land entered by Thomas A. Compton, in favor of Daniels & Plumer, for $13,333 33.

These mortgagees instituted suit in the Third District Court for the parish of Orleans against Mrs. Compton, and obtained judgment, with full recognition of mortgage, etc.

Execution was issued, and the sheriff of Madison parish, to whom it was directed, acting thereunder, seized and sold all the property described in the said mortgage on the 6th June, 1868, when Adam Daniels, one of the plaintiffs in execution, became the purchaser.

On the 31st January, 1871, for and in consideration of $10,000 in cash paid her, Mrs. Eliza Compton ratified and confirmed the sheriff's sale of 6th June, 1868.

Adam Daniels sold the property to F. L. Maxwell & Bro. H. R. Lucas purchased a portion from Maxwell & Bro., and F. L. Maxwell purchased his brother's interest.

In their defense to these actions, the defendants set up their title to the lands in question, except certain portions thereof designated as swamp lands, which they admitted were entered by Thomas A. Compton, and belonged to him at his death. They alleged that the residue was their property, acquired by them from Adam Daniels, who acquired at sheriff's sale of the 6th of June, 1868, made under the foreclosure of the mortgage given by Mrs. Eliza Compton to Daniels & Plumer in 1866.

They averred that Mrs. Compton acquired the property at sheriff's sale in November, 1852, and that at that time she was separate in property from her husband, T. A. Compton, by virtue of a judgment rendered in the Fourth District Court of New Orleans on the 15th of June, 1847, and the proceedings under it.

There was judgment in favor of the defendants for all the lands sued for, save those they disclaimed title to in their answer, and condemning plaintiffs to pay costs of suit, from which judgment plaintiffs have taken this appeal.

The record discloses that Thomas A. Compton, the ancestor of the plaintiffs, through whom they claim, was divested of the ownership of the Mound plantation on the 8th of February, 1841, by a forced sale under an order of seizure and sale in a proceeding entitled David Stanbrough, Curator of the succession of Jesse Harper, vs. Thomas A. Compton; and there is no evidence in the record showing that he ever

afterwards acquired this property in his own name. The plaintiffs, however, contend that it was re-acquired by him or by the community of which he was the head, it is uncertain which, by virtue of the purchase made by his wife, Mrs. Eliza Compton, on 17th of November, 1852, when the property was sold under the proceeding against Felix Compton, instituted by the curator of Harper's succession above referred to; and they deny that the community between Thomas A. Compton and his wife had been dissolved at the date of said acquisition.

We find in the transcript the entire record of a suit instituted in the name of Mrs. Compton against her husband in the Fourth District Court of New Orleans in 1847, in which judgment was rendered in her favor on a moneyed demand, and decreeing the dissolution of the community. This judgment was rendered after citation to the husband, was duly published, and followed by an execution, on which there was a return of *nulla bona.* The separation of property purporting to be established by this judgment, was subsequently and uniformly recognized by both parties thereto by many acts and proceedings. This recognition is shown by the purchase of property in the name of the wife, including the property in controversy, in some of which purchases the husband joined to authorize her; by powers of attorney executed by her to her husband empowering him to represent her in her business affairs, which during his life were conducted in her name; by her mortgaging this property after the death of her husband, as her separate property, and when sold as her property, receiving ten thousand dollars in consideration of her ratifying the sale. Besides, we have the testimony of the attorney who obtained the judgment of separation, and who swears that he represented her in that proceeding, and who moreover states that the husband was insolvent then and remained so till his death, which occurred in 1861.

Surely all these facts must, to the legal mind, far outweigh the uncertain evidence afforded by the parol testimony of the mother of the plaintiffs and one of the plaintiffs themselves, contradictory of that derived from these acts and judicial proceedings, and by which such solemn acts and proceedings of the parties thereto are sought to be overthrown. Under our settled jurisprudence, the effect of authentic acts and judicial proceedings cannot be so easily impaired, nor titles to real estate resulting therefrom or evidenced thereby so easily destroyed.

We do not deem it necessary to go minutely into all this testimony, but deem it sufficient to announce our conclusions respecting it.

In the face of these acts and proceedings it would hardly be contended that Thomas A. Compton, if alive, could be listened to in asserting a claim to this property. His heirs claiming through him stand in no better condition.

We have carefully and patiently examined the pleadings and evidence in the case, and find no error in the judgment save in one respect, and that is merely a matter of costs. Though judgment was rendered in favor of the plaintiffs for part of the lands claimed, they were condemned to pay all the costs of the lower court. This must be corrected. They should pay the costs incurred in the District Court prior to the disclaimer of title to part of the lands and the tender of the same.

It is, therefore, ordered, adjudged and decreed that the judgments appealed from be affirmed, the costs of the District Court up to the filing of the answers to be paid by the defendants, and the remaining costs of the District Court and of this appeal to be paid by the plaintiffs.