No. 13,915.

107 295
f119 691

GUSTAVE D. REVOLL VS. STROUDBACH & STERN AND EDWARD DUFFY, SR.

SYLLABUS.

1. The purchaser of real estate bought by a married woman in her own name and evidently with her paraphernal funds is without good ground to urge that the property was a community asset in the presence of the fact that the testimony establishes that it was not.

2. A title to immovable property formerly bought by a woman whose name in the act is preceded by the letters "Mrs." and subsequently sold by her in an act wherein nothing leads to the inference that she was married, and in view of the fact that other testimony amply sustains the contention that she was not married, is unquestionably good and valid.

3. Moreover, the title falls within the grasp of the statute of prescription of ten years during which owners have been in possession without any adverse claim urged to the property by any one. It can be safely decreed that the purchaser is tendered a title which he must accept.

APPEAL from the Civil District Court, Parish of Orleans.— Theard, J.

George G. Kronenberger, for Plaintiff, Appellant.

E. J. Murphy, for Defendants, Appellees

The opinion of the Court was delivered by

BREAUX. J. Plaintiff sued for the return of the sum of five hundred dollars ( a payment made on account of the purchase price of a lot of ground and improvements thereon designated as lot 5 of the assessment rolls, in square No. 234, and measuring, more or less, forty feet front on Julia street by one hundred and thirty-nine feet in depth, bounded by Girod, Baronne and Carondelet streets), and for the release from paying two thousand four hundred dollars balance of the purchase which was to be paid on receiving a good and authentic title.

He says that the owner who undertook to sell him the property cannot give him a good title by reason of the fact that Edward Duffy, Sr., who acted as agent in selling him the property, was not duly authorized by the owner, Mrs. Noble, and by reason of the further fact that if he was the owner's attorney in fact, this owner bought the property from the Eureka Homestead Society in the year 1891 during the community existing between her and her husband, John Gilding, and that

the property, in consequence, became property of the community existing between her and her husband.

In the deed of sale to her the following is one of the clauses: "And the said Mary Ann Gilding and John Gilding both declare that the property herein conveyed is purchased by said Mrs. Gilding with her own separate funds."

Mrs. Gilding, widow of John Gilding, was the widow of Edward Cosgrove when she was married to Gilding.

Plaintiff also objects because Emily Glover, one of the ancestors in title, bought the property from John G. Coks per act before Charles Stringer, Notary Public, on the 10th of February, 1874. and in the deed Mary Glover is referred to by the notary as Mrs. Mary Glover; she signed the deed Mary Glover.

In 1884 Mary Glover appointed Charles LeSassier her agent to sell the property, and a short time thereafter LeSassier. agent. sold the property to Emile Bellocq and Michael Beatty. She is not referred to in the procuration or deed of sale as being a married woman.

In 1886 it became, by purchase, the property of the Eureka Homestead Society, and was afterwards sold to Mrs. Gilding as heretofore mentioned.

Plaintiff finds ground of complaint in the fact, as he asserts, that in the Glover to LeSassier procuration, which was signed in Kentucky, the Notary does not give the full name of the vendor, and says that the vendor, "Mrs. Emily Glover, was not authorized by her husband."

Four years after Emily Glover had sold the property, as heretofore mentioned, she made her testament by authentic act, and in it declared that her name was Emily Glover, widow of John Glover. She referred to a son, deceased, named William Horace Glover. In a deed of mortgage, of record, executed in 1874, the name is written Miss Emily Glover; also in the petition of foreclosure of this mortgage in 1879.

Returning to the title while in the name of Mrs. Gilding, it appears that she departed this life in 1891. leaving a will in favor of Mary Ellen, wife of John Noble. A short time after her death an inventory was taken of the property in her name and Mrs. Mary Noble (wife of John Noble), issue of the first marriage of the late Mrs. Gilding with Cosgrove, was put into possession as universal legatee.

In addition to the declaration in the deed, when she became the owner, as before stated, that the property belonged to Mrs. Gilding personally and not to the community, the record shows that the suc-

cession of Mrs. Gilding was opened and settled and final judgment rendered, showing that the property was her paraphernal property. The evidence further discloses in this connection that Edward Duffy and Georgiana Derham swore that Mrs. Mary Cosgrove, widow of John Noble, was the only issue of Mary Ann Gilding, and, furthermore, this is sustained by the last will of the late Mrs. Gilding. John Noble, husband of Mary Noble, died in Ireland in 1899.

The judge of the District Court sustained the title and rendered judgment for the defendant. Plaintiff prosecutes this appeal.

A power of attorney, in due form, and duly authenticated, was executed by Mary Cosgrove, in Ireland, in July, 1900, to Edward Duffy, Sr., of New Orleans, empowering him to sell the property heretofore described, and it binds the vendor, the sole owner of the property at the time.

Plaintiff seems to apprehend that Mary Ann Gilding left other heirs besides Mary Noble. The record abundantly shows, as we think, that this apprehension has no foundation in fact. The declaration in her will is emphatic and direct. "I have only one child living, and she is the issue of my first marriage. Her name is Mary Ellen, wife of John Noble." This is sustained by other evidence in the record. There is not the least reason for concluding that this fact is not just as shown by the testimony.

In the second place, as another ground of objection, plaintiff's contention is that the property was the property of the community between the late Mrs. Gilding and John Gilding. We have seen that Mrs. Gilding bought the property in question in 1891 for her account exclusively with her paraphernal funds, and John Gilding, her husband, joined in the act. The husband joined his wife by signing the act, and, having acquiesced for years in the declaration, is bound by the deed as written. Only forced heirs and creditors would, perhaps, have had cause to complain, but the evidence shows that Gilding died leaving no forced heirs nor creditors.

We pass to plaintiff's contention growing out of the fact that Emily Glover's name is mentioned in the act of sale as Mrs. Emily Glover; that, therefore. the presumption arises that she was married at the date of sale, and in view of this fact she could only dispose of one-half of the property. The name of this vendor is twice preceded in two acts by "Mrs." In other acts and papers about the same time this

abbreviation is not inserted. She may have been wife or widow, or never married. No one appears ever to have known or heard of the husband, and the fact that his name was not mentioned in the deeds of date subsequent to the act of purchase, and other facts and circumstances, lead to the unavoidable inference that she was not married at the date of her purchase of the property and at the date of its sale.

Good faith is one of the issues and the effect of many years of uninterrupted peaceable possession. In our view, those who in turn, as owners, have had possession of the property were in good faith. They had every reason to think that they owned under a good title. If the one who owned the property from 1874 to 1884 was married, the husband (of Mrs. Glover), because of the good faith of the subsequent owners, has lost all right by his continuous absence and negligence. Defendants and their ancestors in title did not have the least reason to suspect that there was a better outstanding title than their own, for there was, as we take it, no outstanding title.

The weight of the testimony clearly shows that this owner was not married. To hold otherwise would be attaching too much importance to the prefix in question, sometimes used by even notaries without good reason, and we would have to overlook other testimony showing that this defendant was never known to have been married. Between the mythical husband and the good faith and title of defendant, we do not hesitate in sustaining the latter.

For reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from is affirmed.