(44 South. 429.)

No. 16,319.

JONES et al. v. JONES et al.

(May 13, 1907. Rehearing Denied June 28, 1907.)

1. DESCENT AND DISTRIBUTION—RIGHTS OF HEIRS—CONVEYANCES IN FRAUD OF HEIRS.

A forced heir is not estopped to attack, to the extent necessary to protect his legitime, the alleged illegal, fraudulent, or simulated conveyances of the person to whom he occupies that relation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 16, Descent and Distribution, § 210.]

2. SAME.

The rule which denies to the creditor the right to assail the acts of his debtor, committed prior to the creation of his debt, has no application to the right of action of the forced heir for the reduction of an excessive donation, which, though arising only upon the death of the donor, relates back to a date anterior to the donation.

3. PRESCRIPTION—COMPUTATION OF PERIOD—ACCRUAL OF RIGHT OF ACTION.

The prescription of an action to reduce an excessive donation begins to run from the date of the death of the donor.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Limitation of Actions, § 336.]

4. ACTION—GROUNDS—MOTIVE FOR ACT.

The imputation or an illegal motive for doing an act authorized by law discloses no cause of action, since, by authorizing the act, the law places the motive beyond inquiry.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Action, § 4.]

5. ESTOPPEL—EQUITABLE ESTOPPEL—PERSONS ESTOPPED.

An ordinary heir cannot be heard to allege the turpitude of the person under whom he claims, nor to assert a claim which such person would be estopped to assert.

6. JUDGMENT—EQUITABLE RELIEF—CONSENT JUDGMENT.

Children of a first marriage attacking a judgment of separation of property between their deceased father and his second wife, as an absolute nullity, and alleging that it was obtained by consent, without proof, and was not executed in due time, and also alleging prejudice to their legitime as forced heirs of their father, as the effect of such judgment, disclose a cause of action.

7. HUSBAND AND WIFE — SEPARATION—ACTIONS.

The provisions of the law which authorize the wife to obtain judgment of separation of property contemplate that the separation shall not be a matter of consent, but shall be the result of deliberate, judicial, action, predicated upon proper pleading, a hearing of the parties, and due consideration of the evidence submitted by them, and that the judgment rendered shall not, even then, of itself, be binding on the creditors of the husband. The husband may, however, in such case, waive citation and his wife's want of authorization to bring the suit.

8. JUDGMENT—EQUITABLE RELIEF—EVIDENCE—BURDEN OF PROOF.

Where children of a first marriage, claiming as forced heirs, attack a judgment decreeing a separation of property between their ancestor and his second wife, and allege prejudice to their legitime, the burden of sustaining the validity of the judgment rests upon those who rely on it, and, if they fail to show the existence of conditions authorizing it and compliance with the law in the matter of its execution, the judgment will be decreed to be, and to have been, void, and all property thereafter acquired, whether in the name of the one spouse or the other, unless affirmatively shown to be the separate property of the widow, will be held liable for such legitime.

9. SAME—RELIEF AWARDED.

Unless, in such case, the judgment is shown to be a mere simulation, the forced heirs take nothing under Act No. 5, p. 12, of 1884, and can succeed in their attack only to the extent necessary for the protection of their legitime.

(Syllabus by the Court.)

Appeal from Seventh Judicial District Court, Parish of Richland; William Jefferson Gray, Judge.

Action by G. T. Jones and others against Mrs. Margaret Jones and others. From a judgment in favor of defendants, plaintiffs appeal. Reversed and rendered.

Hudson, Potts & Bernstein, for appellants. H. Flood Madison, Andrew Augustus Gunby, and George Wesley Smith, for appellees.

Statement.

MONROE, J. Plaintiffs, who are the (major) children of Moses Jones, deceased son, by first marriage, of Thomas Jones, also deceased, sue to annul a judgment of separation of property rendered against their grandfather, in favor of his second wife; to have certain property, thereafter acquired in the name of the wife, decreed to have become the property of the community; and to have themselves put in possession, as forced heirs of their grandfather, of an undivided one-sixth interest therein. Incidentally, they ask that a donation, made by the widow of their grandfather to her (and his) children, of certain of the property referred to, be annulled, and, in their original petition, they prayed that certain judgments, obtained some 30 years ago, by R. B. Todd and Hiller & Co., together with all the proceedings thereunder, be annulled; but this latter portion of the demand was subsequently abandoned in answer to an exception that Todd and Hiller & Co. had not been made parties defendant. The allegations upon which plaintiffs rely, as setting forth their cause of action, are, in substance, that the judgment attacked by them was a consent decree, entered into by collusion between their grandfather and his second wife for the purpose of defrauding your petitioners' father and his brother and their mother of "their interest and rights, as forced heirs, in the property of the said Thomas Jones, acquired during his first marriage as well as that acquired and to be acquired thereafter," and that it was and is absolutely null, for reasons which will hereafter be stated and considered: That the judgment was not published and executed as required by law.

Defendants, who are the widow and five (major) children of Thomas Jones, by his second marriage, after pleading various exceptions, including those of no cause of action, estoppel, and prescription, answered, denying the allegations of the petition and affirming the validity of the judgment attacked and of the subsequent acquisitions of property by them. The following are the facts disclosed by the evidence, to wit:

Thomas Jones (father of Wm. L. and Moses Jones, issue of his previous marriage), in July, 1859, married Margaret Holdiness, herein made defendant, and in August, 1869, she obtained the judgment of separation of property which is made the subject of the present attack. On March 10, 1903, Jones died, leaving no estate, and on March 4, 1904, this suit was instituted. At the date of his said marriage, Jones owned a farm, consisting of two tracts of land, the one, of 119.94 acres, for which he had paid $700, March 5, 1858, and the other, of 79.95 acres, for which he had paid $575, March 29, 1858; and in October, 1859, he purchased another tract, of 110.38 acres, for which he paid $275.95, and added the same to his farm, which will hereafter be called the "Home Place." In 1866, there was paid into his hands the sum of $475, inherited by his wife from her brother, James Holdiness, who had been killed while serving as a soldier in the army, and in March, 1869, he mortgaged the home place to secure $2,500, borrowed from his wife's brother, Thomas Holdiness. He had, however, sufficient property, exclusive of that so mortgaged, to have paid the judgment, and, between the date of its rendition and that of the issuance of the execution thereon, he purchased several other pieces of real estate, for which he paid cash, and which were sufficiently valuable to have satisfied the execution. As the cause of action in her suit, Mrs. Jones alleged that her husband owed her $475, for paraphernal funds which had been placed in his hands, that he was of a speculative disposition, and was "daily incurring heavy indebtedness, in buildings and improvements and extensive planting," which she feared might prove disastrous, and thereby

endanger her rights, and she prayed for judgment dissolving the community and condemning him in the amount stated, which allegations he denied. The claim for the money was established by evidence which has been confirmed in the present litigation; but neither upon the original trial nor here does any evidence appear to have been introduced which supports the other allegations of the petition. To the contrary, the proof that we find in regard to Mr. Jones' business character and responsibility is that introduced in the present proceeding, and it is all to the effect that, though he appears to have failed in business in 1882 or 1883, he had, prior to that time, always enjoyed the reputation of being a solvent and successful man.

The judgment dissolving the community and awarding Mrs. Jones the $475 claimed by her was signed August 16th and recorded August 23, 1869, and was duly published, but there appears to have been no attempt to execute it until May, 1872, when a writ of fieri facias was issued, under which the home place was seized, and, having been appraised at $1,552, was adjudicated to Mrs. Jones, for $3,400, of which amount (as per the sheriff's return) the purchaser retained $3,346.10, as due to the mortgage creditor, and there was expended $45.75 for costs, leaving a balance of $8.15, which was credited on the writ. After this execution, the farming operations on the home place were conducted by Mrs. Jones, mainly through her husband, as her agent, until 1888, when she placed them in charge of her son, W. J. Jones, by whom they were carried on, in her name and for her account, during the 15 succeeding years. In the meanwhile, the two sons of the first marriage had been educated in the colleges of Kentucky, Ohio, and Indiana, and liberally assisted in getting into business when they returned home.

In January, 1874, Mrs. Jones, with the authorization of her husband, became the surety of his son William, as tax collector and assessor of the parish of Richland, in the sum of $10,000. In February, 1875, Moses wrote a letter to his father, from the Indiana State University, in which, among other things, he said:

"I could not be better anywhere than I am here. * * * The $200 which you sent me was duly received, yesterday. I must confess that the amount was just twice as much as I expected, which proves to my satisfaction that you have confidence that I will not squander your money in any way useless to myself. We have six boarders where I am boarding, and it is seldom that they get more than $25.00 at a single time. I think their parents have not got large sums to spend, or they have no confidence in their children as you have. I have never known you to mistrust any of your children."

In August, 1875, William, who was engaged in business as a merchant at Rayville, entered into a contract with Lehman, Abraham & Co., of New Orleans, for the obtention of $7,000, in money and supplies, to carry him, as a merchant and planter, during the year, and his father and stepmother indorsed his notes for that amount, and she (appearing in the contract as separate in property from her husband), in order to secure the payment of the notes, mortgaged, as her separate property, certain real estate which she had acquired after the execution of the judgment against her husband. In the meanwhile, too, Thomas Jones had bought other land, which he cultivated for his own account, and in 1877 (or about that time) he went into business as a merchant at Girard, with one Hicks as his partner, and also established at Rayville the mercantile firm of T. & W. L. Jones, of which his son William became a member, and which carried on a large and prosperous business for several years; so much so that, when, in June, 1880, William died (leaving no descendants), he left property, the appraised value of which was some $21,000, and a will whereby he bequeathed the same to his widow, his brother Moses, his nephew Gerald (son of Moses, and

plaintiff herein), his half-brother, Thomas Jones, Jr., and his mother, Mary A. Townsend, to the entire exclusion of his father, whom he charged with the administration of certain property devised to his nephew Gerald, until the latter should attain his majority, and who, though a forced heir, appears to have made no opposition to the execution of the will, but allowed his legitime to be distributed as directed by the testator, and thereby to inure to the benefit, in part, of his son Moses as a legatee under universal title. Beyond that, he formed a business partnership with Moses, which continued until the death of the latter, in 1882, and he then turned the business over to the widow, the mother of the present plaintiffs, who continued to conduct it, in her own name and for the benefit of herself and her children, whilst her father-in-law appears to have retired to the home place, which, with the aid of the children of the second marriage, he worked for his wife's account, until 1888, when, as already stated, W. J. Jones took entire charge of, and continued to manage it, for the same account, until, in March, 1903, his mother donated it to him by an act in which, reserving an amount deemed sufficient for her own support, she distributed the rest of her property among her children.

### Opinion.

The gravamen of plaintiffs' complaint is that their grandfather illegally and fraudulently disposed of his property to the prejudice of their rights as his forced heirs. It is hardly necessary to say that, for the purposes of the relief sought, plaintiffs do not occupy the position of their ancestor, since it is his alleged illegal acts to the prejudice of rights conferred on them, not by him, but by the law, that they call in question. The plea of estoppel, which would be good as against him or any one claiming under him, has therefore no application to them. Rach-

al v. Rachal, 4 La. Ann. 506; Maples v. Mitty, 12 La. Ann. 759; Guilbeau v. Thibodeaux, 30 La. Ann. 1099; Tessier v. Roussel, 41 La. Ann. 474, 6 South. 542, 824. Nor can the rule be applied to plaintiffs under which a creditor is denied the right to attack a judgment (such as that here in question) rendered prior to the date at which his cause of action may have arisen, since, although their cause of action arose only upon the death of their grandfather, both the cause and the right relate back to those dispositions of his property, as the result of which his estate at his death was found inadequate to meet their demand for the proportion reserved to them by law. Civ. Code, art. 1502 et seq. Upon the other hand, by the express terms of the law, the prescription which precludes the exercise of the right of action to reduce dispositions, otherwise legal, within the disposable portion, begins to run only from the death of the donor (Civ. Code, art. 3542; Perrault v. Perrault, 32 La. Ann. 635; Succession of Moore, 42 La. Ann. 336, 7 South. 561; Wells v. Goss, 110 La. 355, 34 South. 470), and the term fixed by the statute had not been completed when this suit was begun. Moreover, if the proceedings by which the separation of property is said to have been effected were absolutely void, it is as though they had never taken place, and it has been held that a title absolutely void cannot be a basis of prescription. Spurlock v. Mainer, 1 La. Ann. 306. We therefore conclude that the pleas of estoppel and prescription are not well founded. Considering the exception of no cause of action, it is evident that the mere imputation of an illegal motive for the doing of an act authorized by law discloses no cause of action, since, by authorizing the act, the law places the motive beyond inquiry. Spencer v. Sheriff, 46 La. Ann. 1213, 15 South. 706. It is equally evident that, as mere ordinary heirs, plaintiffs cannot be heard to allege the turpitude of their grandfather, or to as-

sert a claim which he could not have assert-ed. Succession of Dejan, 40 La. Ann. 438, 4 South. 89; Maples v. Mitty, 12 La. Ann. 759; Compton v. Maxwell, 33 La. Ann. 685; Tessier v. Roussel, 41 La. Ann. 474, 6 South. 542, 824; Guilbeau v. Thibodeaux, 30 La. Ann. 1101.

They, however, allege that the act done by their grandfather was not the act authorized by law; that is to say, they allege that, whilst the law authorizes a separation of property between husband and wife, under certain circumstances and on their complying with certain conditions, their grandfather and his wife assumed to effect such separation, to plaintiff's prejudice, although the required circumstances did not exist, and the required conditions were not complied with, and hence that no separation was effected that the law can recognize; and they make these allegations, not as ordinary heirs, but as forced heirs, who have the standing of creditors. The exception is therefore not well founded.

Upon the merits of the case, whatever may be our conclusion as to the legality and sufficiency of the judgment, as the result of which plaintiffs' grandfather and his wife assumed that they were separated in property, and as to plaintiffs' right of action, as predicated upon the alleged injury sustained by them in consequence of that assumption, the evidence adduced fails to satisfy us that either the defendant Mrs. Jones or her husband were actuated, in the obtention of that judgment, by any purpose to defraud plaintiffs' "father and his brother and their mother," as alleged in the petition, or that the supposed separation of property was intended as a sham and a fiction. So far as the record shows (and it appears to disclose the necessary facts), all the property standing in the name of Thomas Jones, at the date of the institution of the suit for separation of property, belonged to him individually or to the second community, and there is no evidence suggesting that his first wife (from whom, as we infer, he had been divorced), or the first community, have any interest in it whatever, or that the first wife or her children had any pretense of a claim against him arising from the first community. Upon the other hand, it is shown beyond dispute that W. L. Jones (the brother of their father, to whom plaintiffs refer in their petition) was a party to an authentic act, executed more than five years after the judgment in the suit referred to had been rendered, in which his father's second wife appeared, as separate in property from her husband, and for his (W. L. Jones') benefit, mortgaged, as her separate property, certain real estate, which she had so acquired after the execution of said judgment; and it is also shown that, as separate in property from her husband, she became the surety of W. L. Jones, on his bond as tax collector, in the sum of $10,000. From which, it follows, as we think, that he, at all events, would have been estopped to set up the pretensions and make the charges which are here set up and made, partly in his name. It is also shown that plaintiffs' grandfather and his second wife did everything that affection and liberality could suggest for the welfare and prosperity of plaintiffs' father and uncle, and commanded their respect and affection so long as the two sons lived.

Plaintiffs, however, complain of injury resulting to them from the operation of the judgment which they attack, and which they allege is, in contemplation of law, nonexistent, and, if their grounds of attack are well founded, the doors of the courts cannot be closed upon them, for other than legal reasons.

They say that the judgment in question is null:

(1) Because their grandfather owed his

wife nothing at the time that it was rendered.

The evidence adduced upon the original trial and in this litigation shows that he owed her the amount for which the judgment was rendered.

(2) Because the allegations upon which the judgment was based were insufficient, if proved, to authorize such judgment.

It has long been settled that the wife may obtain the separation of property provided for by article 2425, Civ. Code, for causes other than those specified in that article (Davock v. Darcy, 6 Rob. 342; Jones v. Morgan, 6 La. Ann. 631; Penn v. Crockett, 7 La. Ann. 343; Wolf & Clark v. Lowry, 10 La. Ann. 272; Vickers v. Block & Britton, 31 La. Ann. 672; Brown v. Learned & Smythe, 40 La. Ann. 325, 4 South. 300); and we are not prepared to say that, on proof that the husband was of a speculative disposition, and that he was "daily incurring heavy indebtedness," a case might not be made out of danger to the dotal and paraphernal rights of the wife and to her future acquisitions, which would entitle her to such separation.

(3) Because the allegations of the petition were not proved.

We have seen that the allegation to the effect that Thomas Jones owed his wife $475 on account of her paraphernal funds, which he had received, was proved; but, the original record fails to show that any evidence was adduced in support of the allegation that he was of a speculative disposition and was daily incurring heavy indebtedness which endangered the rights of his wife, and there has been no such proof made in this litigation. To the contrary, the evidence offered upon the trial of the instant case shows that (at least until 1882 or 1883, when he seems to have failed in his mercantile business) he was an active, successful, and solvent business man.

(4) Because the judgment was not published or executed, as required by law.

There was sufficient proof of the publication of the judgment, and the failure to publish it would have furnished plaintiffs no ground for complaint, as they do not show that they would thereby have been injured. Turnbull v. Davis, 1 Mart. (N. S.) 563; Brown v. Learned & Smythe, 40 La. Ann. 326, 4 South. 300. It is also proved, however, that no attempt was made to execute the judgment during about two years and nine months after its rendition, and no sufficient reason is given for the delay, since, apart from the fact that her husband owned property (other than the home place), from which the judgment could have been satisfied, Mrs. Jones, under the then existing law, and until January, 1870, was secured with respect to her paraphernal claims by a tacit mortgage which rested on the home place itself, and primed the conventional mortgage imposed, in 1868, in favor of her brother.

The law applicable to the question of the proof required in support of a demand for separation of property and of the execution of the judgment decreeing such separation and to the subject under consideration, in general, is as follows:

The wife is authorized to obtain such separation, during marriage, upon her and her husband's complying with certain conditions, which contemplate that the separation shall not be a matter of mere consent, but shall be the result of deliberate judicial action, predicated upon proper pleadings, a hearing of the parties, and due consideration of the evidence submitted by them, and that, even then, the judgment of separation shall not, of itself, be binding upon the creditors of the husband. Thus, after providing that the separation may be petitioned for whenever the dowry of the wife is in danger, "owing to the mismanagement of her husband, or otherwise, or when the disorder of his affairs induces her to believe that his estate may not be sufficient to meet her rights," or when the

husband neglects to reinvest the dotal effects of the wife, in cases where the law directs such reinvestment, our Code further provides that:

"Art. 2427. The wife must petition for the separation of property and it can be only ordered by a court of justice, after hearing all parties. It can, in no case, be referred to arbitration. Every voluntary separation of property is null, both as respects third persons and the husband and wife, between themselves.

"Art. 2428. The separation of property, although decreed by a court of justice, is null, if it has not been executed by the payment of the rights and claims of the wife, made to appear by authentic act, as far as the estate of the husband can meet them, or at least by a bona fide, non interrupted suit to obtain payment."

Article 2429 provides for the publication of the judgment. Article 2434 provides that:

"The creditors of the husband may object to the separation of property, decreed and even executed, with a view to defraud them. They may even become parties to a suit for separation of property and be heard against it."

Under this law, it is as imperatively necessary for the wife to prove the condition of her husband's affairs, "which induces her to believe that his estate may not be sufficient to meet her rights," as it is for her to allege such condition, and such is the jurisprudence of this court. Webb v. Peet, 7 La. Ann. 92; Judice v. Neda, 8 La. Ann. 484; Lacomb v. Husband, Id. 485; Hendricks v. Wood, 33 La. Ann. 1051.

It is well settled that the judgment of separation of property becomes absolutely null if there be undue delay in its execution (where it is susceptible of specific execution), unless it appears that the attempt to execute would have been a vain thing. Bertie v. Walker, 1 Rob. 431; Longino v. Blackstone, 4 La. Ann. 513; Heyman v. Sheriff, 27 La. Ann. 194; Nachman v. Le Blanc, 28 La. Ann. 345; Chaffe v. Scheen, 34 La. Ann. 684; Jones v. Morgan, 6 La. Ann. 632; Hardie v. Turner, 31 La. Ann. 469. It is also well settled that, where such judgment is alleged by a creditor of the husband to have been obtained by fraud and collusion, the burthen of proving

that it had a legal foundation is upon the wife. Malone v. Kitching, 10 La. Ann. 85; Campbell v. Bell, 12 La. Ann. 193; Powlis v. Cook, 28 La. Ann. 546; Carroll v. Cockerham, 38 La. Ann. 813.

It is true that the old rule (to the effect that the entire judgment becomes void by delay, or failure, in the execution) has been modified to the extent that it is now held that a judgment decreeing a separation of property, and condemning the husband to pay a sum of money, may be good, in so far as it decrees the separation, though void as to the moneyed demand for failure to execute. Henderson v. Trousdale, 10 La. Ann. 548; Jones v. Morgan, 6 La. Ann. 630; Vickers v. Block, 31 La. Ann. 673; Walmsley & Co. in Liquidation, 107 La. 433, 31 South. 869. But that presupposes that the judgment of separation is based upon sufficient allegation and proof. Where, however, as in this case, the judgment is void, as to the separation for lack of proof, and as to the demand for money, for lack of execution, there is nothing left of it and the relations of the husband and wife are as though no such judgment had been rendered. Dennistoun v. Nutt, 2 La. Ann. 483; Hayden v. Nutt, 4 La. Ann. 65; Webb v. Peet, 7 La. Ann. 92; Heyman v. Sheriff, 27 La. Ann. 194.

As to the lack of authority in the wife to bring the suit for separation of property and the lack of service of citation on the husband, he waived both, as he was competent to do, by answering to the merits.

The transaction here attacked not having been simulated, plaintiffs take nothing under Act No. 5, p. 12, of 1884, and they can succeed in their attack only to the extent necessary for the protection of their legitime. Maples v. Mitty, 12 La. Ann. 759; Guilbeau v. Thibodeaux, 30 La. Ann. 1100; Compton v. Maxwell, 33 La. Ann. 685; Brown v. Stroud, 34 La. Ann. 374; Kerwin v. Insurance Co., 35 La. Ann. 33; Succession of Dejan, 40

La. Ann. 437, 4 South. 89; Tessier v. Roussel, 41 La. Ann. 474, 6 South. 542, 824; Revoll v. Stroudback, 107 La. 297, 31 South. 665. As their grandfather left six forced heirs (counting the three plaintiffs as one), their interest in his estate amounts to one-ninth, or one-eighteenth of the entire property standing in his name, or, in that of his wife, or otherwise belonging to the community, at the time of his death, subject to the payment of his and the community debts, and subject also to such collation as the law and the facts may warrant.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed; that the plaintiffs, Gerald T. Jones, William L. Jones, and Claude C. Jones, be recognized as the forced heirs of their grandfather, the late Thomas Jones, and, as such, entitled to an undivided one-ninth interest in the property owned by him at the time of his death. It is further adjudged and decreed that, for the purposes of plaintiffs' demand to be recognized as the forced heirs of their said grandfather, and so far as may be necessary for the enforcement of their rights, as such, the judgment of the parish court of Richland Parish, rendered and signed August 19, 1869, decreeing a separation of property between said Thomas Jones and Margaret Holdiness, his wife, and condemning him in the sum of $475, with interest, be decreed to be, and to have been of no effect, and that the community of acquêts or gains, existing between said husband and wife, be decreed not to have been dissolved by said judgment, but to have continued until dissolved by the death of said Thomas Jones. It is further adjudged and decreed that the donation, by authentic act, before John W. Summerlin, deputy clerk of the Seventh district court, and notary, of date November 6, 1903, whereby Mrs. Margaret Jones, defendant herein, conveyed to her codefendants, Mrs. Lizzie Scott, W. L. Jones, H. W. Jones, John Jones, and H. P. Jones, certain property therein described (acquired in her name during the life of her husband), be decreed null, and that said property be decreed, for all the purposes of the plaintiffs' claim, and to the extent of an undivided half interest therein, to belong to the succession of said Thomas Jones. It is further adjudged and decreed that the plaintiffs be put in possession of an undivided one-eighteenth interest in the property described in said act of donation and in all other property owned in indivision by the succession of Thomas Jones and the defendants herein, or either of them, all subject to the payment, by plaintiffs, of their just proportion of the debts of their said grandfather and of his succession and of the community, and subject, also, to such collation, between them and their coheirs, as the law and facts may warrant. It is further adjudged and decreed that defendants pay the costs in both courts, and that plaintiffs' demands, in all other respects be rejected.