This is an action by the plaintiff to recover his legitime, being a one-third interest in certain real estate situated in this city and formerly belonging to Edward Cunningham and now in the possession of the defendant and warrantors.
The plaintiff is the son of the adopted daughter of Cunningham and his capacity or quality as a forced heir of said Cunningham (the death of his mother having preceded that of Cunningham) was not contested in the pleadings, was not urged in the original briefs or in the oral argument either on the original or the rehearing; hence we are not called upon to decide the question of the plaintiff's legal status as an heir.
The real defense to the suit is twofold: First the prescription of five years acquirendi liberandi; and, second, that having purchased the said property in good faith from those who acquired from the apparent and presumptive heirs of Cunningham, the defendant's title and possession cannot now be disturbed by the real heir, whose existence was unknown at the time the said presumptive heirs took possession of the property.
Edward Cunningham died in this city on June 27, 1915. He was survived by a divorced widow, two brothers and two sisters, and the plaintiff. He had made two wills; one dated July 6, 1909, and the other May 13, 1914. When the first will was written, the testator and his wife had not been divorced, and in that will he bequeathed all of his property to his wife; she was however not designated by name.
In his second will, which was written after the divorce, he did not specially revoke the prior will, but he did make dispositions, which, if they had been legal, would have had that effect. He directed that part of his real estate be rented until a sufficient amount had been received to discharge a debt against the property and authorized his *Page 802 
executors at their discretion to sell certain other real estate to pay debts. This latter will also contained some small legacies inconsistent with the first will and named John E. Cunningham and Peter Mooney as executors. The first will did not name an executor.
On July 14, 1915, the will of May 13th was presented for probate by John L. Cunningham, but for some reason unexplained the said will was not then probated. One of the sisters, on January 20, 1916, filed an application to be appointed administratrix of the succession and this application was opposed by the two brothers.
On March 17, 1916, Elizabeth Grace Cunningham, the divorced widow, presented for probate the will dated July 6, 1909.
In her petition for probate it was alleged that the decedent left no forced heirs and that he bequeathed to her all of his property. She did not pray for the appointment of an executor, nor did she pray that she be recognized as the sole and universal legatee under the will.
This will was probated on April 7, 1916, but the order named no executor; the order of probate simply being that the will be deposited in the office of the clerk of the civil district court and that the execution thereof take place according to law.
On June 9, 1916, the court, on joint motion of the parties, appointed Mrs. Elizabeth Grace Cunningham and John L. Cunningham joint executors of the estate.
Thereafter the brothers and sisters of the decedent sued to annul the will of July 6, 1909, on the ground that Mrs. Cunningham was not the wife of the testator at the time of his death when the will took effect, and therefore was not a beneficiary under said will. It was further contended that the first will was revoked by the second one.
In answer to this demand filed on November 17, 1916, Mrs. Cunningham affirmed the *Page 803 
validity of the will in her favor, and prayed that she be decreed to be entitled to all of the property which Edward Cunningham owned at the time of his death.
The matter of the probate of the second will and the action of nullity of the first will appear to have been tried together, and on March 8, 1917, judgment was rendered by the district court rejecting the demand in nullity and ordering the probate of the will of May 13, 1914, except as to the disposition regarding the renting of the property, the care of the brother and sister of the testator, and the purchase of a lot in the cemetery.
An appeal was prosecuted from this judgment and the judgment was affirmed by this court on January 3, 1918. 77 So. 506,142 La. 702.
It may be well to mention here the fact that the widow and collateral heirs pending the contest over the two wills compromised their differences by which all of the disputants should share in the property of the estate.
On March 9, 1917, the widow and the brothers and sisters joined in a sale of the property to the Eureka Homestead Society and thereafter the property by sequent transfers passed to the defendant and warrantors.
We have given the dates and facts concerning the estate and leading up to the present suit, at length and in detail, because of their significance and as we take it, important bearing on the applicability of the pleaded prescription, as well as the other defense relied on by the defendant and warrantors.
The plea of prescription is based on Civil Code, art. 3542, and the jurisprudence construing that article, in which it is declared that actions for the reduction of excessive donations are prescribed by five years.
It will be observed that the article of the Code does not fix the period at which this prescription begins to run against an action to reduce either a donation inter vivos or a testamentary disposition and it must be admitted *Page 804 
that the jurisprudence on the subject has not been entirely uniform and free from apparent confusion.
Article 1504, Civil Code, seems to contemplate that the action arises at the date of the death of the donor or testator, for it provides that, on the death of the donor or testator, the reduction of the donation, whether inter vivos or mortis causa, can be sued for only by forced heirs or by their heirs or assigns.
In the case of Cox v. Von Ahlefeldt, 30 So. 175, 105 La. 543, the prescription of an action to reduce a testamentary disposition was held to commence to run from the probating of the will, and the same rule seems to have been applied in Succession of Meisner, 46 So. 889, 121 La. 863, and in Succession of Williams, 61 So. 852, 132 La. 866.
But in the case of Jones v. Jones, 44 So. 429, 119 La. 678, it was held that the prescription of an action to reduce an excessive donation inter vivos begins to run from the date of the death of the donor.
The reason for the difference in the application of the prescription to the two classes of donations is apparent. As stated by counsel for defendant, with respect to donations inter vivos the forced heir can ascertain whether they affect the legitime immediately on the death of the donor, but with respect to testamentary dispositions it is impossible for such heir to determine whether his legitime has been affected until the instrument purporting to have that effect has been produced and probated.
We are of the opinion that the prescription pleaded is acquirendi liberandi and that, where a will naming a universal legatee with seizin of the property has been duly probated and such legatee has been recognized and sent into possession of the property by judgment of a court of competent jurisdiction, then such prescription begins from that date to run against the action of the forced heirs for reduction.
The record in this case, however, discloses *Page 805 
an exceptional and peculiar state of facts to which the rule just stated cannot be made to apply and the prescription cannot be held to have commenced on April 7, 1916, the date when the will was proved and ordered to be deposited and executed. The prescription only began to run after the judgment rendered on March 8, 1917, which judgment probated the will of May 13, 1914, modifying the previous will, and which was the first and only judgment that recognized the widow as the one who was named as universal legatee in the will of July 6, 1909.
The order of probate of April 7, 1916, could not possibly form the basis of the beginning of the prescription, for, as we have seen, the will did not name the universal legatee, the order of probate did not recognize the widow as universal legatee, it did not send her into possession under the will, and it did not appoint any one to carry the will into execution.
It was not possible for the plaintiff to know for certain that the widow was the one who was to be considered as the universal legatee until the judgment of March 8, 1917.
He did not know and could not have known until that time against whom to bring his suit for reduction of the testamentary disposition. It is a well-recognized principle that prescription never begins to run until the cause of action arises, and the cause of action here did not arise until the widow was recognized as the party who was referred to in the will, and who was entitled to the benefits conferred by that will.
The plaintiff, therefore, brought his suit in less than five years from the date when it was definitely determined that there was an adversary claiming adversely to him and against whom he could bring his suit.
In support of the second ground of defense, the defendant cites with confidence the cases of Martinez v. Wall, 31 So. 1023,107 La. 737; Succession of Derigny, 63 So. 56, 133 La. 382; and same Succession in *Page 806 
100 So. 251, 156 La. 146, which hold that, where the existence of the real heir is unknown and a person supposed to be the legal heir has been sent into possession, third persons may safely deal with the supposed heir thus sent into possession; that a sale consented to by a putative or apparent heir must be maintained where there is good faith on the part of the purchaser and vendor.
We have no fault to find with the ruling in the cited cases, and we approve the same.
But the principle adopted cannot be applied in this case.
The facts in those cases are entirely different from the facts presented in the instant case. In the cited cases the putative and apparent heirs had been recognized as such and sent into possession of the property by a judgment of the court and the purchasers had the right to rely with full faith on the judgment so decreeing the parties to be as they represented themselves to be.
It is to be observed that the court did not lay down the broad rule as contended for here that, where the existence of the real heir is unknown, third persons may safely deal with the supposed heir; but the court, as we construe the decisions, emphasized the fact that the rule established only applied to cases where the person supposed to be the heir had been sent into possession of the property in some legal proceeding.
That pronouncement is in perfect consonance with the language of article 77 of the Civil Code:
 "In case a succession shall be opened in favor of a person whose existence is not known, such inheritance shall devolve exclusively on * * * that person on whom the inheritance should have devolved if such person had not existed."
The quoted article clearly contemplates some judicial proceeding recognizing and sending such supposed or apparent heir into possession of the property.
The court in the cited cases did not hold, and this court has never held, so far as we *Page 807 
are informed, that a purchaser may safely rely on the extrajudicial assumption unsupported by any authoritative recognition that his vendor possesses the quality represented or assumed by him.
Yet that is just what the contention amounts to in this case.
The collateral heirs assumed that quality and joined in a sale of the property. They have never been judicially recognized as heirs and have never been sent into possession of the property. If the defendant is to be protected in his purchase under the principle contended for, then collateral heirs, or heirs assuming that quality, can take possession of an estate, appropriate the property thereof, or sell the same on the day following the death of the party to whom they are supposed to be heirs or represent themselves to be heirs, and the purchaser would be protected against the claim of the forced heirs thereafter appearing.
Such a proposition cannot be sustained under any law or jurisprudence.
Nor can the doctrine asserted protect the defendant's title under the purchase from Mrs. Cunningham, the universal legatee.
She was not an apparent nor a presumptive heir when she joined in the sale of the property within the meaning of article 77, Civil Code, and decisions supra.
The article of the Code deals with heirs who succeed to an estate by reason of blood relationship and not with those who are instituted heirs.
It has been well said that testamentary dispositions are made for the very purpose of subverting the order of nature, and there can be, therefore, no analogy between the two modes of transmitting rights.
We conclude that the case, as presented by the facts, is one where the supposed universal legatee, who had not been recognized as possessing that quality, and the collateral heirs, who had not been recognized as such, *Page 808 
and sent into possession of the property, took possession of the property of the estate and sold the same to the authors of defendant's title.
That such purchasers cannot shield themselves from the pursuit and recovery of the property by the forced heir on the doctrine relied on so long as the prescription of five years has not accrued and which prescription began to run only from March 8, 1917; this suit being filed August 11, 1921.
The warrantor Peter Blaise Salatich complains that the court was in error in rendering judgment in his favor against the other parties, Mrs. Hellen, Mrs. Elizabeth Grace Cunningham, Mrs. Foley, Mrs. Houston, and John Louis Cunningham. He is correct in this contention.
The said parties were called in warranty, but were never cited, and made no appearance in the case.
It is therefore ordered and decreed that the judgment heretofore rendered be reinstated and made the final judgment of this court, in so far as it sets aside the judgment appealed from, and in so far as it recognized the plaintiff's ownership in the property described, and in so far as it condemns the said Mrs. Brown to pay the plaintiff the sum of $803.33.
It is further decreed that Mrs. Brown have judgment against Dr. P.B. Salatich for the like sum of $803.33. The judgment in favor of plaintiff against Mrs. Brown and that in favor of Mrs. Brown against Dr. Salatich to bear legal interest from judicial demand, to wit, August 11, 1921, till paid on each installment of rent as it became due.
It is further ordered that the right of Dr. Salatich to proceed against the other parties called in warranty, but not cited, be reserved.
The costs of this suit to be paid by the defendant and warrantors.
O'NIELL, C.J., and ST. PAUL and ROGERS, JJ., dissent. *Page 809 
 On Motion to Correct the Decree.